STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Plaintiff,

v.

John W. PENNINGTON and Robert Howell Summerville, Defendants.

No. LR–62–C–79.

United States District Court E. D. Arkansas, W. D.

March 26, 1963.

---

786

Jacob Sharp, Jr., Little Rock, Ark., for plaintiff.

J. B. Milham, Benton, Ark., for defendant John W. Pennington.

Ted Boswell (of Hall, Purcell & Boswell), Benton, and Frances Holtzendorf, Little Rock, Ark., for defendant, Robert Howell Summerville.

HENLEY, Chief Judge.

This is an action for a declaratory judgment of nonliability under an automobile liability policy issued by plaintiff insurance company to one Andrew Summerville. On June 25, 1960, the vehicle described in the policy, while being driven by the defendant, John W. Pennington, with permission of the named insured, Andrew Summerville, was involved in an accident as a result of which the defendant, Robert Howell Summerville (hereinafter Summerville), sustained injuries. At the time of the accident Summerville was riding in the vehicle being operated by John W. Pennington.

Plaintiff is an Illinois corporation, authorized to do business and doing business in Arkansas, and both defendants are citizens of this State. The amount in controversy exceeds $10,000, exclusive of interest and costs. Thus, federal jurisdiction is present.

After the accident Summerville filed suit against the defendant Pennington in the Circuit Court of Saline County, Arkansas, to recover damages on account of the injuries resulting from the accident. Since at the time of the accident Pennington was operating the vehicle with the permission of the named insured, Pennington was an insured within the meaning of the omnibus clause of the policy, and the insurance company was called upon to defend the suit and to pay up to its policy limits any judgment which Summerville might obtain against Pennington. The insurance company defended the action under a reservation of rights, and Summerville recovered judgment against Pennington in the sum of $18,000, no part of which has been paid.

Before Summerville had taken any steps against Pennington to collect the State court judgment, plaintiff commenced this action in this Court to secure a declaratory judgment to the effect that it is under no legal duty to pay any part of the Circuit Court judgment.[1]

---

1. Plaintiff's limit of liability to any one person growing out of the operation of the insured vehicle was $10,000. However, under Arkansas law Summerville upon securing the issuance of a writ of executon against Pennington, and securing a *nulla bona* return thereon, would have been in a position to maintain a direct action against the company, and, if successful, would have been entitled to a judgment against the insurer up to the single policy limit, plus a 12 percent penalty and a reasonable attorney's fee. Ark.Stats., 1947, Cum.Supp. § 66–4002

In his separate answer Summerville denies that plaintiff is entitled to the relief sought, and, as noted, Summerville has filed a counterclaim for $10,000, plus statutory penalty and attorney's fee.[2] Pennington has also answered the complaint denying that plaintiff is entitled to relief, and by way of counterclaim asks that it be declared that plaintiff is liable under its policy. Pennington also seeks to recover a penalty and attorney's fee.

The cause has been tried to the Court without a jury, and this memorandum opinion incorporates the Court's findings of fact and conclusions of law.

As the case was finally submitted, the only basis upon which plaintiff contends that it is not liable under its policy is Exclusion (g) (2) appearing in that instrument, which exclusion provides that the policy's liability coverage does not extend to "bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." It is the position of plaintiff that Pennington, the insured, and Summerville, the injured party, were at the time of the accident members of the same family and residing in the same household.

The burden of establishing that contention by a preponderance of the evidence is upon the plaintiff, and at the trial plaintiff assumed that burden. While different inferences may perhaps be drawn from the evidentiary facts, there is very little, if any, dispute about the facts themselves.

John W. Pennington is the son of Ollie Pennington and Verna Mae Pennington, nee Summerville, who reside in the Traskwood community in Saline County. The defendant Summerville is the brother of Verna Mae Pennington and the brother-in-law of Ollie Pennington. Hence, Summerville is the maternal uncle of John W. Pennington.

For a number of months prior to the happening of the accident John W. Pennington, and his wife, and Summerville had been residing in the Ollie Pennington house at Traskwood. That house, which contains two rooms and a kitchen, was occupied not only by John W. Pennington, his wife, and Summerville, but also by the elder Penningtons. In addition, there were living in the house Joyce Freeman and Betty Pennington, sisters of John W. Pennington, Marshall Pennington, a brother of John W. Pennington, and Wesley Pennington, a small son of John W. Pennington by a former marriage.

The evidence discloses that John W. Pennington, his wife, and child moved into the Ollie Pennington home in November or December 1959. Prior to that time John W. Pennington and his family had lived in an apartment in the City of Benton, Arkansas, which is not far from Traskwood, and John W. Pennington and his father were both employed by the Owosso Furniture Manufacturing Co. in Benton. The occasion for John W. Pennington's moving in with his mother and father was that he had been laid off from his job at Benton and was no longer able to pay rent on the apartment. John W. Pennington, the wife, and the child remained continuously in the Ollie Pennington home until a few days after the accident, and then moved out.

For several years prior to the fall of 1959 Summerville had resided in California. It seems that during that period of time he was a married man, but when he came back to Arkansas in 1959 he and his wife had separated. Although Summerville's father resided a short distance

and § 66–3238. Thus, when this suit was filed, plaintiff's possible exposure under its policy was in excess of $10,000. There has never been any question that Pennington is insolvent; and after this suit was filed, Summerville sued out an execution in the State court and the sheriff returned it as unsatisfied. By way of counterclaim Summerville seeks to recover the $10,000 policy limit, plus the statutory penalty and fee.

2. After the execution was issued on the Summerville judgment and returned unsatisfied, the Summerville counterclaim was amended to so reflect.

from the Pennington home, Summerville did not move in with his father, but, as indicated, he moved in with his sister and brother-in-law, arriving at about the same time that John W. Pennington moved in. It appears further that before going to California Summerville resided at least for a time with his sister and brother-in-law.

Ollie Pennington who remained employed by Owosso after John W. Pennington was laid off was the principal and practically the entire source of support for the nine persons dwelling in his house. Neither John W. Pennington nor Summerville paid the elder Pennington or were called upon by him to pay any sums for room or board, although they may have made small financial contributions to the extent that they were able. Both John W. Pennington and Summerville did some work around the house and yard. The women did the housework.

Summerville's father operated a small farm, and Summerville was working for him on shares when the accident occurred. Summerville testified that it had been his intention prior to the accident to turn over to his brother-in-law the bulk of his income from the crop as compensation for his board and lodging, but it is clear that if he in fact entertained such an intention, it was purely voluntary on his part since Ollie Pennington was making no charge for his accommodations and his support.

As indicated, the question which the Court must determine is whether in view of the facts above stated Summerville and John W. Pennington were members of the same family, dwelling in the same household.

When definitions of the words "family" and "household" contained in dictionaries and legal encyclopedias are examined, it is apparent at once that those words have no fixed or precise meaning. They may mean one thing in one context and something quite different in another context. The Court is concerned with their meaning as they appear in an exclusion clause contained in a policy of automobile insurance, which clause was inserted for the purpose of protecting the insurance company from liability collusively imposed. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108; State Farm Mutual Automobile Insurance Co. v. James, 4 Cir., 80 F.2d 802.

The Supreme Court of Arkansas apparently has had no occasion to construe or apply a family or household exclusion clause appearing in a liability insurance policy, and Arkansas cases discussing the meaning of "family" or "household" in other contexts are of little real value here. See Central Manufacturers Mutual Insurance Co. v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557; Yadon v. Yadon, 202 Ark. 634, 635, 151 S.W.2d 969; Harbison v. Vaughan, 42 Ark. 539; Greenwood & Son v. Maddox & Toms, 27 Ark. 648.[3]

■ With no ruling or particularly instructive Arkansas cases to serve as a guide, it becomes the duty of the Court to determine as best it can how the Supreme Court of Arkansas would construe the exclusion in question and how that Court would apply it to the facts shown by the record. In making that determination reference must be made to underlying principles of Arkansas insurance law and to the decisions from other

3. Central Manufacturers Mutual Insurance Co. v. Friedman, supra, involved the question of whether the insured's minor son who was away from home on military service was a member of the insured's household so as to be within the *coverage* of a policy insuring the named insured and members of his household against loss due to theft of personal property. In that context a broad definition of "household" was required, and the Court held the term to be synonymous with "domicile." The other Arkansas cases above cited involved claims of homestead exemptions by alleged heads of families. The domestic arrangements shown to have existed in all four of the cases do not closely resemble the arrangements existing in the instant case.

jurisdictions in which the question has been presented.

■ It is a well settled principle of Arkansas law that ambiguous terms in an insurance policy are to be construed most strongly against the insurer. Insurance Co. of North America v. Ferrell, 234 Ark. 581, 353 S.W.2d 353; Travelers Indemnity Co. v. Hyde, 232 Ark. 1020, 342 S.W.2d 295; American Standard Life Insurance Co. v. Meier, 220 Ark. 109, 246 S.W.2d 128; Central Manufacturers Mutual Ins. Co. v. Friedman, supra. On the other hand, an insurance policy, like any other contract, must be construed reasonably and fairly so as to ascertain and carry out the intentions of the parties; and resort may not be had to a forced or unreasonable construction to avoid what may appear to be a harsh result. McKinnon v. Southern Farm Bureau Casualty Co., 232 Ark. 282, 335 S.W.2d 709; Mercury Insurance Co. v. McClellan, 216 Ark. 410, 225 S.W.2d 931, 49 A.L.R.2d 806; National Life & Accident Ins. Co. v. Merritt, 200 Ark. 158, 138 S.W.2d 79; American Fidelity & Casualty Co. v. McKee, 198 Ark. 601, 130 S.W.2d 12; Aetna Life Insurance Co. v. Spencer, 182 Ark. 496, 32 S.W.2d 310; Penn-National Hardware Mutual of Huntington, Pa. v. Griffin, 174 Ark. 627, 296 S.W. 66, 53 A.L.R. 1106. In construing an insurance policy a common sense approach should be used, and generally the words employed in the policy are to be understood in their ordinary sense. American Fidelity & Casualty Co. v. McKee, supra; State Farm Mutual Automobile Ins. Co. v. Belshe, 195 Ark. 460, 112 S.W.2d 954.

As stated, the foregoing Arkansas rules of construction are well settled and are conventional, as has been expressly recognized by the Court of Appeals for this Circuit in Jefferson Insurance Co. of Pine Bluff, Arkansas v. Hirchert, 8 Cir., 281 F.2d 396, 400.

■ The scope and application of a family exclusion contained in an automobile insurance policy were discussed in detail by the Supreme Court of Minnesota in Tomlyanovich v. Tomlyanovich,

supra, in which opinion many cases are collected and analyzed. The question is also the subject of an Annotation appearing in 50 A.L.R.2d 120 et seq., following the text of the Tomlyanovich opinion. Somewhat related Annotations appear in 48 A.L.R.2d 8 and 173 A.L.R. 901. From a consideration of the authorities just mentioned it seems clear that ultimately the question of whether a given exclusion does or does not apply in a given case is one of fact to be determined in the light of the language of the particular exclusion involved and of the facts and circumstances of the particular case. This being true, a detailed analysis of Tomlyanovich or of other cases would not be particularly helpful here and will be pretermitted.

■ Regardless of what specific words may be chosen to define a family, it seems to the Court that any accurate definition in present context must embrace the concept of a group of related individuals, dwelling together, and welded by familial ties into a single sociological unit. A mere aggregation of individuals living under one roof does not constitute a family, even though the individuals may be related to each other. This was expressly recognized by the Supreme Court of Arkansas in Harrison v. Vaughan, supra.

While there is no question that John W. Pennington and Summerville were blood relatives or that they were living under one roof, and while it may be conceded perhaps that they were members of the same "household," namely that of Ollie Pennington, the evidence in the Court's estimation does not preponderate in favor of plaintiff's proposition that John W. Pennington and Summerville were members of the same "family."

The evidence does not disclose that there was any particular familial closeness between John W. Pennington and his uncle. John W. Pennington was a married man who had at one time maintained his own family establishment in Benton, and who with his wife and child had been driven to his father's house by economic stress. Summerville came

to the same house apparently for his own convenience. Shortly after the accident John W. Pennington, his wife, and child left the parental house and reestablished, at least for a time, a home of their own.

■ As has been said, the burden is upon the plaintiff to establish the applicability of the exclusion, and plaintiff has failed to sustain its burden. On the evidence before it the Court simply cannot find a family relationship between the nephew and the uncle so as to bring the exclusion into play. Hence, the complaint will be dismissed.

■ Since the Court is adjudicating that plaintiff is liable under its policy with respect to the Summerville judgment in the State court, and since Summerville has now amended his counterclaim so as to establish the issuance of the writ on execution of said judgment and the return of the writ unsatisfied, he is entitled to a money judgment on his counterclaim, the judgment to include an award of statutory penalty and a reasonable attorney's fee. Aetna Life Insurance Co. v. Little Rock Basket Co., E.D.Ark., 14 F.R.D. 381. The Court finds that the sum of $1,000.00 is a reasonable fee to be taxed against plaintiff, and that sum will be allowed.

■ While Pennington also seeks the allowance of a 12 percent penalty and a fee, such cannot be allowed him on the basis of Ark.Stats., § 66–3238 because he paid no part of the Summerville judgment and is not obtaining any monetary award in the instant case. Counsel for Pennington says in his brief, however, that the demand for a fee is based upon section 66–3239. That statute makes no provision for any penalty, but it does provide that in all suits in which the judgment or decree goes against a life, fire, health, accident or liability insurance company, either in a suit by it to cancel or lapse a policy or to change or alter the terms or conditions thereof in any way that may have the effect of depriving the holder of such policy of any of his rights thereunder, or in a suit for a declaratory judgment under such policy

or in a suit by the holder of such policy to require such company to reinstate such policy, the company shall be liable "to pay the holder of such policy all reasonable attorneys' fees for the defense or prosecution of said suit, as the case may be, which fees shall be based on the face amount of the policy involved * * *."

In American Republic Life Insurance Co. v. Claybough, 227 Ark. 946, 302 S.W. 2d 545, the Supreme Court of Arkansas held that the statute is penal in nature and is to be construed strictly.

Assuming that Pennington's counterclaim amounts to such a suit as is contemplated by the statute, the difficulty with his claim is that he is not the "holder" of the policy, which was issued to Andrew Summerville, although as stated he was an "insured" under the policy and was entitled to policy protection. Pennington's claim for penalty and attorney's fee will be denied.

An appropriate judgment will be entered.